### THE DEFIANCE and THE EDWIN DAYTON.

(District Court, S. D. New York. March 15, 1899.)

COLLISION—TUG AND TOW—RIGHT OF WAY—FAILURE TO OBSERVE SIGNALS.

The steam tug Defiance, with two canal boats lashed to her side, on approaching the gap leading into the Atlantic Basin, Brooklyn, while some distance away, gave the usual long whistle to indicate that she was going in, and again, when near the entrance, twice signaled by two whistles. The tug Dayton, with a tow, was approaching the gap from the inside, and when the second signal was given by the Defiance was from 100 to 200 feet from the entrance. She did not stop, and there was a collision between the tows in passing in the gap, without fault in navigation on the part of the Defiance. *Held*, that the Defiance was the privileged vessel, entitled to the right of way, and the Dayton was alone in fault for the collision, in failing to observe the signals, and to keep inside until the Defiance had passed through the gap.[1]

This is a libel by Edgar Van Buren against the steam tug Defiance and the steam lighter Edwin Dayton, for collision.

Cowen, Wing, Putnam & Burlingham, for libelant.

Davies, Stone & Auerbach and Herbert Barry, for the Dayton.

James J. Macklin, for the Defiance.

BROWN, District Judge. At about 11 o'clock in the forenoon of September 15, 1898, as the steam tug Defiance was passing through the gap at the entrance of the Atlantic Basin, Brooklyn, with two canal boats lashed to her starboard side, the starboard boat came in contact with a scow on the starboard side of the tug Edward Dayton, which was then coming out of the gap. The libel was filed to recover the damages thereby sustained by the libelant. The wind at the time was high from the N. W. and the ebb tide strong, which swept down directly in front of the gap. These circumstances made it impossible for the Defiance to go upon a straight line through the gap. More or less of swinging was unavoidable, and the line of her entrance was necessarily more or less uncertain. Some little time before

---

[1] As to signals of meeting vessels, see note to The New York, 30 C. C. A. 630.

reaching the outside of the gap, the Defiance had given the usual long whistle to indicate that she was coming in, and when near and at the entrance she twice gave a signal of two whistles. The evidence leaves no doubt that when the long whistle was given the Dayton was inside the basin and 500 or 600 feet distant from the gap, and that at the first signal of two whistles she was 100 or 200 feet back of the gap. In this situation, there is no doubt that the Defiance was the privileged vessel and had the right of way. It was the duty of the Dayton and her tow to keep within the basin and not enter the passage of the gap. As the Dayton in her answer denies knowledge of the long whistle given by the Defiance, it is probable that it was not heard by the Dayton; but it was heard by other vessels in the immediate vicinity, and if not heard by the Dayton, it was through negligence and inattention. It is plain also that the Dayton did not reverse as soon as the two whistles of the Defiance were heard, and that this was before she had entered the gap.

As respects the navigation of the Defiance in entering the gap, I am satisfied, not only from her own witnesses, but by the testimony of the mate of the Dayton, that her navigation was such as was usual and proper under such circumstances.

I find, therefore, that the collision arose from the fault of the Dayton in not giving proper attention to the signals of the Defiance, and in not keeping out of the gap until the Defiance had passed through, and that it was without fault of the Defiance.

Decree for the libelant against the Dayton with costs, and dismissing the libel as to the Defiance with costs.